Judge Graham
delivered the opinion of the Court.
The complainant Hammon, by his bill in Chancery, charges “that he sold to the defendant Adams a mill-seat on Licking river and a small piece of land on both *6 sides of said river, opposite the mill-seat, on which to abut his dam and build a mill-house; that by the terms of the contract, Adams was to build a water grist and saw mill; he was to grind Hammon’s grain toll free, and was to saw all the lumber, which the complainant wished to use, free of any charge. This was the only consideration for the mill-seat and land.” The bill further charges that after Adams had completed the grist mill, he was, by reason of his poverty, unable to complete the saw mill; that for the purpose of “enabling himself to complete said mills and render full consideration for the mill-seat and land and to perfect in himself the title, he proposed to complainant to become an equal partner with him in the saw mill in expenses and profits. On these terms a partnership was formed between the parties.” That, at their equal expense, the mill was put in operation, and that he then conveyed the mill-seat to Adams and took from him, a writing, by which it is shown “that he was to have one half of the water tide for sawing;” that the mill was profitable for some time to both parties, and until Adams “arrogated to himself the exclusive control of the mill, and would not suffer complainant to repair or use the mill, and gives it out in speeches that he intends to let said mills go to ruin, and build another on the opposite shore,” .and thereby rid himself of his obligations to complainant. The bill further charges, that to the extent of the saw mill, he is a full partner of said Adams, and as to its apendants, the seat, &c., he is a joint tenant with him — Adams holding the legal title as trustee for him. The prayer of the bill is for an order restraining Adams from building a mill on the opposite shore and for a specific execution of the contract; for a dissolution of the partnership; for a salo of the property and division of the proceeds, &c.
The defendant in his answer admits in substance the first contract set forth in the bill as to sawing and grinding. As to the alleged partnership he states that almost every thing had been done in relation to the erection of the saw mill, except the irons, &c.; and it was agreed *7 that each partner was to be at equal expenses in the purchase of the necessary machinery; to bestow an equal amount of labor, and to have equal use of the saw mill — that is, that each was to saw alternately 100 feet of lumber. They were to use the mill separately, not jointly. He admits that Hammon did an equal portion of labor, but denies that he contributed an equal portion of expenses; and says that the partnership, in fact, embraced only the use of the saw, and did not include the mill house, seat and fixtures. He alleges that hitherto he has fully complied with all his undertakings with complainant, and yet is willing to do so. lie admits that he is about erecting another mill, and insists upon his right to do so. He resists the prayer in complainant’s bill. After the filing of this answer, and without taking any proof, the parties at the May term, 1848, submitted their cause to three arbitrators, and agreed on the record that their award should be the decree of the Court. The arbitrators forthwith returned their award, which was, by the Court, immediately approved and ordered to record. The award states that the arbitrators met on the 29th February, 1848, and were then sworn, &c.
The award and decree.
We do not clearly perceive how it was that these gentlemen met as arbitrators nearly three months before the order was made appointing them to that office. We suppose, however, that the parties had in vacation made the appointment, and that the action of the Court was merely in confirmation of that previous act of the parties. Their award is drawn up in the manner of a decree. It forever restrains Adams from erecting the mills on the opposite side of Licking river; it decrees that he shall grind the complainant’s grain for his family use, at all times hereafter toll free, unless prevented from doing so by unavoidable accidents; it also decrees that the complainant and defendant are equal partners in the saw mill and in one undivided fourth part of the six acres of land; it dissolves the partnership, and directs that in low water the grist mill shall have the preference of the tide; and then decrees that the saw *8 mill and an .undivided fourth part of the six acres of land be sold on a credit of twelve months, appoints the commissioner and makes him an allowance for his serservices, and directs the proceeds of the sale to be equally divided between the parties, and specifies what portion of the expenses of keeping up and maintaining the dam and abutment shall be borne by the parties and their successors. At the August term, 1848, the commissioner reported a sale and conveyance to the complainant Hammon.
It, is error to act upon an award returned into Court at the same term when the parties have not been fur** nished with copies as the statute requires.
At the May term, 1849, the Court confirmed all these acts of the commissioner and awarded a writ of habere facias possessionem.
By the foregoing statement, it will be seen that the arbitrators, in their award, acted upon some matters not embraced in the controversy of the parties as set forth in bill and answer, and that they have made the complainant a partner in the saw mill, and in the land around it, when the complainant himself has not aver-ed that the partnership was so extensive. The agreement in writing between the parties, which should have been previously noticed in this opinion, is dated some days after the date of the deed from Hammon to Adams, and in that instrument Adams undertakes to grind Hammon’s grain for family use toll free, as long as said mill keeps in operation. The award does not limit the obligation to grind by the operation of the mill, but by unavoidable accidents. The agreement stipulates that Hammon is to have the one half the benefit of the sawing tide time, so long as the mill remains in operation. The defendant denies that Hammon was entitled to any further benefit or privilege, and there is no other proof in the cause. But whatever objections there may be to the award, it was the duty of Adams to have taken exceptions to it in the Circuit Court, if he had opportunity to do so, and if he failed to object when he might have been heard, he should not now be permitted to complain. We are constrained to say that no such opportunity appears to have been given. The award was returned immediately upon the appointment of the ar *9 bitrators, and was forthwith sanctioned and approved by the Court.
Can a covenant to grind thegrain of another be specifically decreed? Qúeie.
There is nothing in the record to show that Adams had any reason to suppose that the award would be immediately returned into Court, or that the Court would forthwith approve of it, and order it to be recorded. Nor is there any evidence that he had ever seen it or been furnished with a copy of it, or waived his right to have one. “ It is erroneous to rend.er judgment on an award at the return term, unless the party objecting to it had been furnished with a copy of it, or waived objection to the omission to give him a' copy:” (4 J. J. Marshall, 227.) “ The law secures to each party the right to a copy of the award fifteen days before it shall be entered as the judgment of the Court:” (2 Bibb, 159.) When a copy has not been delivered, the judgment of the Court should be postponed until the next term: as thereby giving the party that time to avail himself of any objections to the award, would completely afford him the benefit the law intended, by requiring the delivery of a copy; (2 Bibb, 162.)
We deem it very questionable, to say the least of it, whether Hammon’s remedy against Adams for refusing to grind or saw for him, or for negligently or wilfully not keeping his mill in order, (if in fact he has so failed,) is not at law exclusively. Circumstances may, however, exist which would render it proper for the Court to decree a specific execution of the agreement between these parties. So far as the facts are presented in this record, there is nothing to authorize the oi’der or decree forbidding Adams to erect the additional mill; but as the case may assume a very different aspect after the cause is returned to the Circuit Court, we deem it proper at present only to determine, that the Court erred in acting on the award so speedily, and that time should be afforded each party to take exceptions to it; and if the exceptions shall be in whole or in part sustained, then that such other proceedings be had in the premises as the equity of the case requires.
Hazlerigg for plaintiff; Apperson for defendant.
Wherefore, the decree ®f the Circuit Court is reversed, and the cause is remanded, with directions for other and further proceedings, in accordance with this opinion.